**Zouhir ZAHAF, Plaintiff–Appellant,**

v.

**John ASHCROFT, United States Attorney General; James Ziglar, Commissioner, U.S. Immigration and Naturalization Service; Michael J. Conway, Acting District Director, U.S. Immigration and Naturalization Service; Jerry Phillips, Acting Officer–in–Charge, Louisville Deportation Office, United States Immigration and Naturalization Service, Defendants–Appellees.**

No. 02–6219.

United States Court of Appeals, Sixth Circuit.

Feb. 11, 2004.

Steffani K. Powell, Jeffrey K. McClain, Louisville, KY, Charles C. Nett, Russell Immigration Law Firm, Louisville, KY, for Plaintiff–Appellant.

Candace G. Hill, David L. Huber, Benjamin S. Schecter, Asst. U.S. Attorneys, Office of The U.S. Attorney, Louisville, KY, for Defendant–Appellee.

Before SILER, DAUGHTREY, and GIBBONS, Circuit Judges.

SILER, Circuit Judge.

In this appeal, Zouhir Zahaf challenges the district court's determination that it lacked subject matter jurisdiction over his habeas action. We affirm.

## BACKGROUND

Zahaf, an Algerian citizen, was originally admitted to the United States in 1995 under a valid F–1 student visa. Desiring to remain in the U.S. after his student visa expired, Zahaf filed an application for asylum and withholding of removal with the San Francisco asylum office. Thereafter the Immigration and Naturalization Service ("INS") served Zahaf with a notice to appear in which it alleged that Zahaf was subject to deportation and advised him that his asylum application had been referred to the immigration court. In 2001, while his asylum application was still pending, Zahaf married Fatiha Roundtree, an American citizen.

At that time the Louisville, Kentucky INS office had an unwritten policy of accepting and processing I–485 applications (for adjustment of status to legal permanent resident) for aliens under voluntary orders of departure and foregoing enforcement of alternate orders of removal against those aliens until such time as their I–485 applications were adjudicated. According to Zahaf, the interim Officer–in–Charge of the INS subdistrict office in Louisville advised Zahaf of this policy and suggested that he abandon his asylum application and seek a voluntary departure order. Relying on this advice, Zahaf withdrew his asylum application, admitted deportability, and moved the immigration judge ("IJ") for a voluntary departure order. On May 5, 2001, the IJ granted Zahaf's motion and ordered him to depart the United States voluntarily by August 5, 2001. Zahaf then on June 12, 2001 filed his I–485 change of status application on the basis of his marriage.

Zahaf did not depart as ordered, but remained in Kentucky with his wife. More than six months after Zahaf's voluntary departure date passed, the Louisville subdistrict office informed him that his I–485 application had been denied.[1] In his decision, the district director cited 8 C.F.R. § 245.1(c)(9)—the regulation stating that aliens married after deportation proceedings had been initiated against them are ineligible to seek a change in status—and then tersely explained that

> [t]he record shows that the applicant filed Form I–485, Application to Regis-

---

1. This denial was later amended to reflect that Zahaf was denied change of status because his marriage had taken place while he was already in deportation proceedings, rather than because he was an "arriving alien" (which he was not).

ter Permanent Residence of Adjust Status on June 13, 2001. The record also shows that on April 5, 2001, the applicant was granted voluntary departure until August 5, 2001. Accordingly, the applicant is statutorily ineligible to file form I–485 ... and the instant application must be and is hereby denied.

After learning that his I–485 application had been denied, Zahaf moved the IJ to reopen his removal proceedings. That motion was denied. Though Zahaf could have appealed to the Board of Immigration Appeals, and ultimately to this court, he did not.

Zahaf was picked up by the INS in 2002. Six days later, he filed this habeas action in the district court. Zahaf's petition purported to challenge Attorney General Ashcroft's "legal determination" that he was "statutorily ineligible" for an I–485 change of status and sought a temporary restraining order prohibiting his deportation until his I–485 application could be adjudicated "on the merits." The district court dismissed for want of subject matter jurisdiction, and Zahaf was subsequently deported.

## STANDARD OF REVIEW

"[This court] review[s] dismissals for lack of subject matter jurisdiction de novo." *Mustata v. U.S. Dep't of Justice*, 179 F.3d 1017, 1019 (6th Cir.1999) (citation omitted).

## DISCUSSION

This dispute revolves around Zahaf's attempt to take advantage of the Attorney General's authority to adjust an alien's status to that of an "alien lawfully admitted for permanent residence" under 8 U.S.C. § 1255(a). Section § 1255 states that an alien's status may be adjusted "by the Attorney General, in his discretion and under such regulations as he may prescribe," when certain conditions are met.

The statute and accompanying regulations (8 C.F.R. § 245.1 *et seq.*) make clear, however, that not *all* aliens are eligible for the exception. One category of aliens not eligible for an adjustment of status are those who, like Zahaf, apply for an adjustment based on a marriage transpiring after deportation proceedings have been initiated against them. 8 C.F.R. § 245.1(c)(9). There is, however, an "exception to the exception." It provides that the Attorney General can adjust status even on the basis of a marriage that took place after the initiation of proceedings if the alien, among other things,

> establishes the marriage is bona fide by providing clear and convincing evidence that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place, was not entered into for the purpose of procuring the alien's entry as an immigrant, and no fee or other consideration was given ... for the filing of the petition.

8 C.F.R. § 245.1(c)(9)(iii)(F). This is the so-called "bona fide marriage exception."

Zahaf, "in proceedings" when he was married and thus under 8 C.F.R. § 245.1(c)(9) otherwise ineligible for an adjustment of status, apparently sought to become eligible by taking advantage of the "bona fide marriage exception" outlined in subsection (c)(9)(iii)(F). Another subsection, 8 C.F.R. § 245.1(c)(9)(iv), explains that to do so "[t]he request [for the bona fide marriage exception] must be made in writing and submitted with the Form I–485." Moreover, "[t]he request must state the basis for requesting consideration for the exemption and must be supported by documentary evidence establishing eligibility for the exemption." *Id.* Zahaf, however, failed to submit a written request and documentation with his I–485 application.

Citing the relevant statutory sections and 8 C.F.R. § 245.1(c)(9), the regulation rendering ineligible all aliens "seek[ing] to adjust status based upon a marriage which occurred ... while the alien was in exclusion, deportation, or removal proceedings, or judicial proceedings relating thereto," the district director of the Louisville INS office in February 2002 denied Zahaf's I–485 application. In so doing, the district director simply applied the statute and regulation to Zahaf's case. As part of his decision, the district director stated that Zahaf's application was being denied because Zahaf was "statutorily ineligible to file form I–485."

■ Broadly speaking, Zahaf's grievance is that, having relied on the Louisville office's past policy and representations that if he agreed to enter into a voluntary departure order then his I–485 application would be "adjudicated on the merits," he was entitled to have his application "adjudicated on the merits." But Zahaf's I–485 application *was* adjudicated on the merits; Zahaf simply failed to apply for the bona fide marriage exemption. Absent a written request for the bona fide marriage exemption—as outlined under 8 C.F.R. § 245.1(c)(9)(iv)—Zahaf was not eligible for an I–485 adjustment (i.e, he was "statutorily ineligible").

Zahaf's negligence in failing to submit the proper paperwork notwithstanding, if what Zahaf says is true, then the Attorney General's policy change renders Zahaf a rather sympathetic figure. But the simple, hard truth is that the Attorney General's decision to proceed with Zahaf's deportation is a discretionary decision insulated from review by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"). The operative provision is 8 U.S.C. § 1252(g), which provides:

Exclusive jurisdiction

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, *or execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added).[2]

On its face, subsection (g) would seem to strip the district court of jurisdiction to hear Zahaf's claim. Zahaf attempts to get around the section's preclusive effect, however, by relying on *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The Supreme Court ruled in *St. Cyr* that the IIRIRA did not totally abolish habeas jurisdiction in immigration cases and that district courts retain habeas jurisdiction in certain, limited situations—specifically, in situations where the habeas action presents a "pure question of law" and where there exists no other judicial forum in which that question of law could be considered. *Id.* at 298.

■ Zahaf thus argues that his appeal presents a "pure question of law." He has had difficulty, however, articulating one. Presumably, Zahaf's "pure question of law" is the Attorney General's "legal determination" that he was "statutorily ineligible" to file an I–485 application for change of status. But, as the district court

2. The "except as provided in this section" language refers to 8 U.S.C. § 1252(b)(9), the so-called "zipper clause." That section provides that

[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

below noted, Zahaf "is not arguing that the immigration judge misapplied the law when he entered the removal order.... Instead of focusing on some misapplication of law or procedure that resulted in the entry of his voluntary order of dismissal, [Zahaf's] claim ... revolves around the Attorney General's decision to enforce the order itself." In his brief Zahaf repeatedly refers to the district director's finding of "statutory ineligibility" as a matter of "statutory construction." This is a mischaracterization. There was no need to "construe" the statute—its directive is clear. The district director merely applied it. Simply referencing the applicable statute does not give rise to a "question of law" for purposes of *St. Cyr.*

Moreover, it is significant that Zahaf's purported "question of law" could have been raised in another judicial forum. After his I–485 application had been denied, Zahaf was still in a position to avail himself of other procedural remedies. Specifically, he could have: (1) appealed the district director's decision (pursuant to 8 C.F.R. § 245.1(c)(9)(viii)); (2) resubmitted his I–485 application, this time with the proper documentation (pursuant to 8 C.F.R. § 245.1(c)(9)(vii)); or (3) appealed the IJ's denial of his petition to reopen his removal proceedings to the Board of Immigration Appeals (pursuant to 8 C.F.R. § 3.1(b)(3)), whose decision could then have been appealed to this court (pursuant to 8 U.S.C. § 1252(b)(2)). *St. Cyr* strongly suggested that such a failure to pursue other avenues of relief was a second factor that rendered habeas jurisdiction wanting.

For the foregoing reasons, the district court correctly concluded that it was without subject matter jurisdiction.

**AFFIRMED.**